THE DANIEL WILLARD.

(Circuit Court of Appeals, Second Circuit.   June 6, 1916.)

No. 300.

COLLISION ⊚⟹96—VESSEL LEAVING SLIP—OBSTRUCTION OF VIEW BY PIER—DUTY TO GIVE SIGNALS.

    A steamship, leaving her pier and passing out into North River close along the north side of a covered pier 1,000 feet long, which cut off the view to and from the south, was in a situation requiring great care, and her failure to go at slow speed, or to give warning to approaching vessels after her slip signal on leaving her own pier, 1,300 feet distant from the end of such long pier, rendered her in fault for a collision with another vessel approaching from the south.

    [Ed. Note.—For other cases, see Collision, Cent., Dig. §§ 203–205; Dec. Dig. ⊚⟹96.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Michael Blasius and Nicholas Blasius, owners of the steamer Seneca, against the steam tug Daniel Willard; the Pennsylvania Coal Company, claimant.   From a decree holding both vessels in fault, libelants appeal.   Affirmed.

On appeal from a decree of the District Court for the Southern District of New York holding the steam tug Daniel Willard and the steamer Seneca jointly in fault for a collision which occurred in the North River about 150 feet northeast of the corner of the Scandinavian Pier which extends into the river about a fifth of a mile from the Weehawken Cove, New Jersey.   The Willard was destined for the Coal Pier at Weehawken; the Seneca was proceeding out into the North River from her berth in the rear of the Scandinavian Pier.   The Seneca alone appeals.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for appellants.

Barry, Wainwright, Thacher & Symmers, James K. Symmers, and Earle Farwell, all of New York City, for appellees.

Before COXE and WARD, Circuit Judges, and CHATFIELD, District Judge.

COXE, Circuit Judge.   The District Court held both the Willard and the Seneca liable.   The Willard has not appealed.   The only question, therefore, is—was the Seneca also guilty of negligence?   The District Judge found her liable for going out of the slip at too great a rate of speed so that when the vessels saw each other they were only about 200 feet apart and in a position where collision was in-

evitable. The Scandinavian Pier is a covered structure about 1,000 feet long. It is impossible for a vessel passing out along this structure to see a vessel approaching from the south until the bow of the former projects from the end of the pier. The same is true of the northbound vessel. She cannot see a vessel coming out along the pier until her helmsman or lookout has passed the corner of the pier. Manifestly the situation was such as to require great care and caution on the part of both the approaching vessels. That whistles were blown while the Seneca was passing along the north side of the pier and was nearing the river is doubtful. The mate, a deckhand on the port bow and another deckhand on the port side near the pilot house of the Willard were in a position where they must have heard any signal coming from the Seneca if one were given, but they testify that they heard none. When first seen by those on the Willard the Seneca was coming out directly across the course of the Willard. It was then too late to avoid collision. We find it difficult to believe that if the proper signals had been sounded from the Seneca the collision would have occurred. The situation unless handled with skill and caution was one of great peril. The Seneca was about to enter the North River in such a manner that a vessel going north or intending to enter the Weehawken Cove could not possibly know of any approaching danger until she had passed the Scandinavian pier head. A vessel intending to leave the Cove was unquestionably required to notify passing vessels of her intention so to do. Especially is this true when a vessel intends to pass out so near to the pier that a north-bound vessel cannot be expected to see her until her bow is about even with the pier head.

Rule V of article 18 of the Inland Rules provides for such a situation as is here shown but its directions were not followed by the Seneca. Of course the blowing of a long slip whistle when the Seneca left her own pier behind the Scandinavian Pier cannot be regarded as a compliance with the rule as she was then about 1,300 feet from the head of the pier. A signal at that point would have given the Willard no definite information as to the Seneca's course. By hugging the Scandinavian Pier so closely she created a situation which made it more than ever incumbent upon her to inform vessels approaching the pier end from the south of her presence and her intentions. If she had passed out into the North River at a speed so moderate that she could have controlled her movements the collision would probably have been averted. We do not think the Seneca can be held free from negligence on this proof.

The situation was analogous to that shown in the case of The Steinway, 135 Fed. 344, 68 C. C. A. 14, where this court decided that it was negligence for a vessel to round a dangerous point so near the shore that it was impossible to get an accurate view of the situation on her port hand until she had actually rounded the point.

The decree is affirmed with costs.